841 A.2d 406

**Lawrence POLAKOFF et al.**

v.

**Jasmine TURNER, a minor, etc. et al.**

**No. 2794, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Feb. 3, 2004.

Charles I. Joseph (M. Bradley Hallwig, Anderson, Coe, & King, on the brief), Baltimore, for appellant.

Saul Kerpelman (Lisa J. Smith, Kevin Urick, Saul E. Kerpelman & Associates, PA on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., JAMES R. EYLER, BARBERA, JJ.

JAMES R. EYLER, Judge.

Following a trial and jury verdict for the plaintiff in this lead paint exposure case, the two issues presented on appeal and cross appeal are (1) whether the holding in *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 835 A.2d 616 (2003) applies to this case and (2) whether the statutory cap on non-economic damages, Md.Code (1974, 2002 Repl Vol.), § 11–108 of the Courts and Judicial Proceedings Article, is constitutional. We shall answer both questions in the affirmative.

This appeal stems from two actions, consolidated for trial, filed by Jasmine Turner, a minor child, appellee, through her mother, Crystal Whittington, in the Circuit Court for Baltimore City. Appellee claimed that she suffered lead paint poisoning as a result of exposure to lead paint in the apartment in which she lived (the Apartment). Lawrence M.

Polakoff (Mr. Polakoff), an appellant, owned the Apartment from 1975 until 1992, when he transferred his ownership interest to C.F.A.S. Limited Partnership (C.F.A.S.), a company in which Mr. Polakoff acts as a Limited Partner.[1] Mr. Polakoff is President of Chase Management, Inc. (Chase Management), the other appellant, the management company that manages the Apartment.

On November 13, 2003, the Court of Appeals issued its opinion in *Brooks*, reversing prior decisions in which the Court applied the common law requirement of notice or reason to know in order to prove that a landlord was negligent in an action for lead paint poisoning. In *Brooks*, the Court held that a plaintiff may establish a prima facie case of negligence based upon a violation of the Baltimore City Housing Code by introducing evidence that there was flaking, loose, or peeling lead based paint in the leased premises. 378 Md. at 72, 835 A.2d 616. This changed the pre-existing notice standard, pursuant to which landlords were liable in a lead paint action only if they knew or had reason to know of the existence of flaking, loose, or peeling paint and had an opportunity to correct the condition. *Richwind v. Brunson*, 335 Md. 661, 673–74, 645 A.2d 1147 (1994).

As they must, appellants implicitly concede that the evidence is sufficient to show the existence of deteriorated lead based paint on the premises. This would be sufficient to support liability under *Brooks*. Consequently, the only liability issue on appeal is whether the holding in *Brooks* applies to this case. Appellee, on cross appeal, challenges the constitutionality of the statutory cap on non-economic damages.

### *Facts*

Appellee claimed that she suffered lead paint poisoning from exposure to lead based paint while residing in the Apartment, located at 17 North Bentalou Street. Crystal Whittington and her mother, Lelia Whittington, lived in the

---

1. CFAS was a defendant. The jury found that it was not liable, and therefore, it is not a party to this appeal.

Apartment from March, 1985 until August, 1994. Appellee was born on April 3, 1990, and lived there from that time until August, 1994.

In 1994, appellee filed a complaint against Mr. Polokoff, asserting negligence, violation of the Maryland Consumer Protection Act, Md.Code (1990 Repl Vol.), § 13–301 et seq., of the Commercial Law Article, and strict liability. In late 1994, the latter two counts were dismissed on motion.

In 1998, shortly before the scheduled trial date, appellee sought to add two defendants, C.F.A.S. and Chase Management. The court did not permit the amendment and, subsequently, entered summary judgment in favor of Mr. Polokoff. On appeal, this Court, in an unreported opinion, *Turner v. Polakoff,* No. 1247 Sept. Term 1998 (filed March 15, 1999), reversed the entry of summary judgment.

In 1998, appellee filed a separate action, containing multiple counts, against C.F.A.S. and Chase Management. The two actions were consolidated in 1999 and tried in October, 2002. At or prior to trial, all claims, with the exception of the negligence claim, were dismissed, either voluntarily or by court order. The only claim submitted to the jury was appellee's negligence claim against appellants and C.F.A.S. The jury returned a verdict in the amount of $500,000 against appellants and found in favor of C.F.A.S. Appellants filed a motion for judgment notwithstanding the verdict and, in the alternative, to apply the cap on non-economic damages. The court denied the motion for judgment notwithstanding the verdict but, by order entered on January 23, 2003, applied the cap and reduced the judgment to $350,000.

A timely appeal and cross-appeal followed.

### The Issues

Initially, appellants contended that the court erred in denying their motion for judgment notwithstanding the verdict on the ground that there was no evidence that appellants knew or had reason to know of the existence of deteriorated paint in the Apartment. Following the decision in *Brooks,* we provid-

ed the parties an opportunity to brief the effect of that decision. In a memorandum filed December 8, 2003, appellants conceded that the appeal "fails"[2] because their sole issue was lack of notice, but they contend that the *Brooks* standard should apply only prospectively and not retroactively. Appellants do not define how they are using those terms except to make it clear that *Brooks* should not apply to this case. Presumably, appellants are contending that *Brooks* should apply only to causes of action that accrue after the filing of the *Brooks* opinion and issuance of the mandate or to an even later point in time.

Prior to oral argument, the Housing Authority of Baltimore City, the Maryland Multi–Housing Association, Inc., the National Association of Industrial and Office Properties, the Property Owners Association of Greater Baltimore, Inc.,[3] and The Mayor and City Council of Baltimore[4] each filed an amicus brief in support of appellants' position.

Appellee challenges the constitutionality of the statutory cap on damages.

## Prospective versus Retroactive

The terms prospective and retroactive are not always used in the same sense. In the context of deciding whether the

---

**2.** If *Brooks* is held to apply to this case, appellants request that the judgment be vacated and the case remanded for a new trial under the *Brooks* standard.

**3.** In its amicus brief, the Maryland Multi–Housing Association, Inc. suggests that *Brooks* should apply prospectively only to those cases whose factual scenarios arise after November 13, 2003. The Property Owners Association of Greater Baltimore, Inc. requests that all cases involving defects existing prior to November, 2003 be governed by the law as it existed before *Brooks*.

**4.** While the Mayor and City Council of Baltimore has filed an amicus brief in support of appellant's motion opposing the retrospective application of *Brooks* to the instant case, we must point out that *Brooks* is based on an interpretation of the Baltimore City Housing Code, and as such, the Mayor and City Council seemingly has the power to address this very issue by amending the Housing Code to require notice of any violations.

holding in a reported appellate decision applies to a particular factual situation, retroactive effect may mean that it applies to the facts in the case that produced the holding and to all pending cases. Generally, the use of the term retroactive does not mean that the holding applies to matters that were finally adjudicated or settled prior to the holding. Confusion may arise because the term prospective is sometimes used in the same manner as retroactive, *i.e.*, to indicate that the new holding applies to the case which produced the holding and to all pending cases in which the issue has been preserved for appellate review. Even more confusing is that the term prospective is also used to indicate that the new holding applies only to the case that produced it and to certain pending cases, or to causes of action that accrue after the date of the new holding, or to cases initiated after the date of the new holding, or to certain events that occur after the date of the new holding, or some combination of the above. With that background, we shall attempt to apply the law to this case.

 "[T]he question of whether a particular judicial decision should be applied prospectively or retroactively, depends in the first instance on whether or not the decision overrules prior law and declares a new principle of law." *Houghton v. County Comm'rs of Kent County*, 307 Md. 216, 220, 513 A.2d 291 (1986). Decisions which do not declare new law will be applied retroactively. *Id.; Potts v. State*, 300 Md. 567, 577, 479 A.2d 1335 (1984). This means that when a judicial decision applies a rule of law that existed both before and after that decision, but applies it to a new factual situation in that particular case, the decision applies to the facts that produced the decision and to all pending cases. *American Trucking Assoc. v. Goldstein*, 312 Md. 583, 591, 541 A.2d 955 (1988).

 When, however, a court overrules a prior interpretation of a constitutional or statutory provision and renders a new interpretation, "the question arises as to whether the new ruling is to operate retroactively or prospectively only." *American Trucking Assoc.*, 312 Md. at 591, 541 A.2d 955. In that situation, the new holding generally applies to the facts

that produced the holding and to all pending cases in which the relevant issue has been preserved for appellate review. *Id.* at 592, 541 A.2d 955.

Finally, when the Court of Appeals changes the common law of Maryland, exercising its authority under article 5 of the Maryland Declaration of Rights, the holding, while applying in the case which produced the holding, generally applies only to causes of action that accrue after the date of the new decision. *Julian v. Christopher*, 320 Md. 1, 10–11, 575 A.2d 735 (1990); *American Trucking Assoc.*, 312 Md. at 592, n. 7, 541 A.2d 955.

In the case before us, the issue of prospective versus retroactive applicability arises because *Brooks* overruled prior decisions. The Court did not expressly address the prospective/retroactive issue in *Brooks*. On occasion, however, the Court has done so.

In *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979), the Court overruled a prior interpretation of the rule requiring a prompt trial of criminal cases and held that dismissal was mandatory when the rule was violated. The Court also held that the decision applied to all future prosecutions and to pending cases that had reached a certain procedural stage. The Court noted that it was not required to apply it to all pending cases because the change in law did not affect the integrity of the fact-finding process, did not render a trial constitutionally impermissible, and did not render a certain type of punishment impermissible. *Hicks*, 285 Md. at 337, 403 A.2d 356. Observing that the rule in question was a prophylactic measure, and that applying the new interpretation to all pending cases would have a substantial impact on the administration of justice, the Court declined to give the new ruling "retroactive effect." *Id.* at 338, 403 A.2d 356.

In *Julian v. Christopher*, the Court of Appeals considered whether to change the common law rule that if a lease contained a "silent consent" clause requiring a tenant to obtain a landlord's permission before assigning or subleasing, a landlord could withhold such consent even for an arbitrary or

unreasonable reason. 320 Md. at 3, 575 A.2d 735. After changing the common law and holding that a landlord's consent to assign or sublease may not be unreasonably withheld, the Court was left to determine whether this change should be applied prospectively only. *Id.* at 9–11, 575 A.2d 735. Noting that it was likely that landlords and tenants relied on the old rule of law when drafting their leases, and that this reliance should be protected, the Court stated that "[c]ontracts should be interpreted based on the law as it existed when they were entered into." *Id.* at 11, 575 A.2d 735. Therefore, which rule of law applied depended on "whether the lease being interpreted was executed before or after the mandate in this case." *Id.*

The Court of Appeals also expressly addressed the prospective/retroactive issue in several other cases. *See Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 162, 497 A.2d 1143 (1985) (changing strict liability with respect to the manufacture and sale of certain types of guns and holding that the change in common law applied to the instant case and to "all other causes of action accruing after the date of our mandate in this case unless it is shown that the initial [wrong] . . ., occurred prior to the date of the mandate."); *Boblitz v. Boblitz,* 296 Md. 242, 275, 462 A.2d 506 (1983) (abrogating the interspousal immunity rule for negligence cases and applying the abrogation prospectively to all causes of action accruing after the date of filing in this case); *Williams v. State,* 292 Md. 201, 217, 438 A.2d 1301 (1981) (changing common law to permit counsel to waive defendant's right to be present at every stage of trial and applying to all trials taking place subsequent to issuance of mandate); *Lewis v. State,* 285 Md. 705, 713, 404 A.2d 1073 (1979) (changing common law rule that precluded trial of an accessory until after principal was sentenced and applied to all trials taking place after issuance of mandate); *Deems v. Western Maryland Railway Company,* 247 Md. 95, 113, 231 A.2d 514 (1967) (holding that an action for loss of consortium when a spouse sustains physical injuries is a joint action and applying to pending actions except for consortium actions barred prior to issuance of the opinion).

■ Aside from the fact that the Court expressly addressed the prospective/retroactive issue and expressly held that the new rulings applied only to certain pending cases, *Williams*, 292 Md. at 217, 438 A.2d 1301; *Lewis*, 285 Md. at 713, 404 A.2d 1073, or to causes of action accruing subsequent to the decisions announcing new law, *Kelley*, 304 Md. at 162, 497 A.2d 1143; *Boblitz*, 296 Md. at 275, 462 A.2d 506, these cases stand for the proposition that a ruling that changes the common law ordinarily will not be applied, except as to the parties before the court, to undo events that have already occurred.

In *Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 469–71, 601 A.2d 633 (1992), the Court of Appeals discussed the difference between changing the common law and overruling a previous opinion on the ground that it was wrongly decided. The Court changed the standard of proof for punitive damages from preponderance of the evidence to clear and convincing, and noted that it was not overruling any prior cases, but rather, that this decision constituted a change in the common law. *Id.* at 469, 601 A.2d 633. Consequently, the Court did not apply its decision to all pending cases but instead, while noting that the decision did not relate to the elements of a cause of action, but rather to the requirements at trial, the Court applied it to all trials occurring after the issuance of the opinion. *Id.* at 470, 601 A.2d 633. The Court also overruled prior cases applying an implied malice standard and adopted an actual malice standard. *Id.* at 472, 601 A.2d 633. This ruling was not a change in common law but rather was a recognition that the prior cases had been wrongly decided. *Id.* at 471, 601 A.2d 633. The Court applied the holding to pending cases. *Id.* at 472, 601 A.2d 633.

■ The case before us is governed by the general rule that a new holding applies to all pending cases. *Owens–Illinois* 325 Md. at 470–71, 601 A.2d 633; *American Trucking Assoc.*, 312 Md. at 592, 541 A.2d 955. In *Brooks*, the Court did not change the common law; it applied settled common law principles. The Court applied the general principle that a violation

of a statute designed to protect a class of persons, including the plaintiff, constitutes evidence of negligence. The holding in *Brooks*, which changed the prior law, was that the Baltimore City Housing Code modified the common law notice requirement; thus a plaintiff does not have to prove that a defendant knew or had reason to know of the defective condition that constituted the violation.

Moreover, unlike in *Julian*, where the Court declined to apply a change in common law related to contracts retroactively, the instant case involves tort liability. 320 Md. at 10–11, 575 A.2d 735. Prospective application is particularly appropriate in a contract action in order to protect the freedom to contract, *id.*, but the same public policy considerations are not present when the question is whether a party exercised reasonable care under the circumstances for purposes of tort liability.

Appellants and the amici argue that applying the *Brooks* decision "retroactively" is unfair and creates a hardship because landlords based their conduct on the prior law. Landlords must now create a system to discover violations of the City Code because they can no longer rely on tenants to provide notice. Additionally, the Housing Authority of Baltimore City observes that it is a governmental agency required to comply with federal regulations which impose duties different from those found in the Baltimore City Housing Code. It also observes that it receives funding from the United States Department of Housing and Urban Development and that costs incurred to conduct inspections would have to be approved by that agency.

Assuming these arguments to be meritorious, they go to the *Brooks* holding and not to the issue before us. In effect, what appellants and the Housing Authority are seeking is a decision that *Brooks* does not apply to (1) any pending case; (2) any claim based on a City Code violation when the violation was in existence prior to the *Brooks* decision; or (3) any claim based on a City Code violation, when the violation came into existence prior to that period of time after the date of filing of the

*Brooks* opinion which would be reasonably necessary to enable landlords to implement an inspection policy. This Court has no authority to fashion such a remedy; those arguments are better directed to a legislative body or the Court of Appeals.

Appellants' sole issue on appeal was lack of notice. No other issue was preserved. Thus, we must affirm the judgment of the circuit court.

### Statutory Cap on Non-economic Damages

█ In *Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102 (1992), the Court of Appeals addressed the constitutionality of Maryland Court and Judicial Proceedings Article § 11–108 imposing a statutory cap on non-economic damages. The Court examined the statute under both the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights. *Id.* at 355, 601 A.2d 102. The Court reiterated that the economic burden placed on plaintiffs will be analyzed under the rational basis test. *Id.* at 368, 601 A.2d 102. Under this test, the statute "enjoys a strong presumption of constitutionality" and is likely to be upheld. *Id.* (citations omitted.) The Court additionally examined the governmental purpose of the statute and determined that a legitimate governmental purpose exists:

> The General Assembly's objective in enacting the cap was to assure the availability of sufficient liability insurance, at a reasonable cost, in order to cover claims for personal injuries to members of the public. This is obviously a legitimate legislative objective. A cap on noneconomic damages may lead to greater ease in calculating premiums, thus making the market more attractive to insurers, and ultimately may lead to reduced premiums, making insurance more affordable for individuals and organizations performing needed services.

*Id.* at 369–370, 601 A.2d 102.

The statutory cap on non-economic damages is constitutional, and for the reasons set forth above, we affirm the judgment of the circuit court.

JUDGMENT AFFIRMED.

COSTS TO BE PAID THREE–FOURTHS BY APPELLANTS AND ONE FOURTH BY APPELLEE.