5 A.3d 45

**DRD POOL SERVICE, INC.**

v.

**Thomas FREED, et al.**

**No. 104, Sept. Term, 2009.**

Court of Appeals of Maryland.

Sept. 24, 2010.

48

Steven 'R. Migdal (Buck, Migdal & Myers, Chartered of Annapolis, MD), on brief, for Petitioner/Cross–Appellant.

Andrew H. Baida (Benjamin Rosenberg and Douglas J. Furlong of Rosenberg, Martin, Greenberg, LLP; Gary A. Wais and H. Briggs Bedigian of Law Offices of Wais & Vogelstein of Baltimore, MD), on brief, for Respondent/Cross–Petitioners.

Jennifer S. Lubinski, Funk & Bolton, P.A., Baltimore, MD, for the brief of Amicus Curiae, Maryland Defense Counsel, Inc.

James L. Shea, Mitchell Y. Mirviss, Michael J. De Vinne, Venable LLP, Baltimore, MD, for Amicus Curiae brief of

Medical Mutual Liability Insurance Society of Maryland, Inc., the Medical and Chirurgical Faculty of Maryland, Inc., t/a the Maryland State Medical Society, and the American Medical Association.

Mark A. Behrens, Philip S. Goldberg, Cary Silverman, Shook, Hardy & Bacon L.L.P., Washington, D.C., for Maryland Chamber of Commerce, Chamber of Commerce of the United States of America, NFIB Small Business Legal Center, American Tort Reform Association, Maryland Motor Truck Association, American Trucking Associations, American Chemistry Counsel, Property Casualty Insurers Association of America, National Association of Mutual Insurance Companies, and American Insurance Association's Amici Curiae Brief in Support of Defendant/Cross–Appellee.

Cary J. Hansel, Joseph M. Creed, Joseph, Greenwald & Laake, P.A., Greenbelt, MD, for Amicus Curiae brief of the Maryland Association for Justice.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

GREENE, J.

In this case, we are asked to determine two issues. First, we are asked to decide whether a jury may consider a claim for conscious pain and suffering when there is a reasonable inference of consciousness prior to the decedent's death, but the length of that consciousness and evidence of pain and suffering during the drowning process are based on expert testimony rather than on eyewitness testimony. The petitioner, DRD Pool Service, Inc. ("DRD"), argues that a claim for conscious pain and suffering cannot be based solely on an expert's opinion in the absence of any case-specific independent objective evidence to support that opinion. The respondents, Thomas Freed and Deborah Neagle Webber Freed (the "Freeds") surviving parents of Connor Freed, argue that once a reasonable inference arises from expert testimony, the jury should decide whether the decedent experienced conscious pain and suffering. After reviewing Maryland case law and

holdings of courts from other states, we agree with the Freeds and shall affirm the judgment of the Court of Special Appeals.

We are asked also to revisit our precedent concerning the constitutionality of Maryland's cap on non-economic damages. We shall hold that the standards for disregarding *stare decisis* and reconsidering precedent have not been satisfied here, and, accordingly, we find no basis to hold that the statutory cap on non-economic damages is unconstitutional.

## FACTS AND PROCEDURAL BACKGROUND

On June 26, 2006, Connor Freed, a healthy five year old boy, went to the Crofton Country Club swimming pool with a family friend, Paul Carroll, and two other children. At some time between 4:15 and 4:30 p.m., Connor left the water and asked Mr. Carroll to remove Connor's life jacket so he could use the restroom. Mr. Carroll removed the life jacket and told Connor to return, after he used the restroom, so Connor could put his life jacket on before reentering the water. According to Mr. Carroll, "after a couple of minutes" he wondered where Connor was because Connor was taking longer than expected to return. Then, Mr. Carroll sent one of the other children in his group into the bathroom to look for Connor.

Around that time, another child pointed to someone floating in the pool. Mr. Carroll and another adult ran over and found Connor face down in the pool, in what Carroll described as a "dead man's float." After Mr. Carroll and the other patron pulled Connor out of the water, emergency help came and attempted lifesaving measures. Connor never regained consciousness. None of the estimated 80–90 patrons at the pool that afternoon saw Connor enter the pool after leaving the bathroom, nor did anyone see him struggle in the water. The autopsy report showed Connor died of drowning, and the medical examiner found "no evidence of significant recent injury."

Thomas Freed, in his capacity as a personal representative of Connor Freed's estate, and the Freeds, together as surviv-

ing parents, filed in the Circuit Court for Anne Arundel County a complaint for damages alleging causes of action for survival and wrongful death. In their lawsuit, they named, inter alia, DRD Pool Service, Inc. ("DRD") as a defendant, alleging DRD's negligence in maintaining the pool. Thomas Freed, as personal representative of Connor's estate, sought damages for conscious pain and suffering, and the Freeds, as surviving parents, sought monetary relief on the basis of their wrongful death claim for the grief and mental anguish they experienced as a result of Connor's drowning. Following fact and expert witness discovery, DRD filed a motion for summary judgment on the claim of conscious pain and suffering. At the hearing, both parties introduced excerpts from the depositions of their respective expert witnesses.

The Freeds' and DRD's experts disagreed on whether it was possible to determine Connor's actual conscious pain and suffering. The Freeds' expert was Dr. Jerome Modell. According to the record, he treated over 100 near-drowning victims and authored a book on the pathophysiology of drowning. Dr. Modell testified to a reasonable degree of medical certainty that Connor experienced pain and suffering during the two and half minutes it approximately takes for a five-year-old to lose consciousness as a result of drowning. He based his opinion on interviews he conducted with patients and animal experiments. Dr. Modell also relied on a report prepared by a group of international experts who participated in the 2002 World Congress on Drowning [1] and an article published in the Edinbrough Medical Journal by Dr. Lowson [2] about his near-drowning experience.

---

1. The World Congress on Drowning brings together all of the acknowledged experts and practitioners in various fields to focus on prevention, treatment, and rescue in order to reduce the incidence of drowning. "World Congress on Drowning: June 26–28, 2002, Amsterdam Rec. room-Brief Article" Parks and Recreation FindArticles.com http://findarticles.com/p/articles/mi_m1145/is_11_36/ai_80448466/ (last accessed Sept. 10, 2010).

2. Dr. Lowson nearly drowned when he was shipwrecked in the early 1900's. He wrote an article which was published in 1903 describing

DRD argued that because no one saw Connor drown, the claim of conscious pain and suffering was not supported by any objective evidence and was therefore precluded. DRD's expert, Dr. Brandis Marsh, admitted it was more likely than not that Connor was conscious when he entered the pool, but he could not say so with exact certainty. Nor could Dr. Marsh say for how long, if at all, Connor consciously suffered while drowning because no eyewitnesses observed him.

After a hearing in the Circuit Court, the trial judge granted DRD's motion for summary judgment on the issue of conscious pain and suffering. The judge explained that no material fact was in dispute because "there is not a dispute that the child was conscious for some period of time." The trial judge relied on the case of *University of Maryland Medical System Corporation v. Malory*, 143 Md.App. 327, 795 A.2d 107 (2001), in which the Court of Special Appeals pointed out that a proponent must show, by some objective measure, that the decedent was conscious of the pain and suffering before the claim may be submitted to the jury. According to the Circuit Court, because there were no eyewitnesses to say when Connor became unconscious, there was no objective measure of Connor's conscious pain and suffering in order for the jury to consider the issue.

■ Proceeding on the remaining wrongful death claim, the jury found DRD negligent and found that DRD's negligence was the proximate cause of Connor's death. The jury awarded the Freeds $4,006,442.[3] Pursuant to the statutory cap imposed in Maryland on non-economic damages, Md.Code (2008 Repl.Vol.), § 11–108 of the Courts and Judicial Proceedings Article (hereinafter "the Cap"), the wrongful death award was reduced to $1,002,500. The statute provides in pertinent part that, "[i]n an action for damages for personal injury in

---

vividly what happened to him while he was submerged. *Freed v. DRD,* 186 Md.App. 477, 484, 974 A.2d 978, 983 (2009).

**3.** The jury awarded $5,000 for funeral expenses, and $2,000,706 each to Thomas Freed and Debra Neagle Webber Freed for non-economic damages.

which the cause of action arises on or after July 1, 1986, an award for noneconomic damages many not exceed $350,000." § 11–108(b)(1). The statutory cap was raised in 1994 to $500,000, and the wrongful death cause of action was added. § 11–108(b)(2)(i). Further, "[t]he limitation . . . shall increase by $15,000 on October 1 of each year beginning on October 1, 1995." § 11–108(b)(2)(ii).[4] The Freeds filed a motion to alter or amend the judgment challenging the constitutionality of the Cap. According to the Freeds, the statutory limitation on non-economic damages violated their right to a jury trial under Articles 5 [5] and 23 [6] of the Maryland Declaration of Rights, the right to redress for injury under Article 19,[7] and the guarantee of equal protection under the Fourteenth Amendment to the United States Constitution and Article 24 [8] of the Declaration of Rights.

---

**4.** We discussed the application of the Cap to wrongful death claims in *John Crane, Inc. v. Scribner*, 369 Md. 369, 375 n. 2, 800 A.2d 727, 730 n. 2 (2002) (discussing the passage of the 1994 amendments to § 11–108 which extended the statutory cap to wrongful death claims and noting that when there are two claimants, the total award may not exceed 150% of the Cap).

**5.** "That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law . . ." Md. Dec. of Rts. Art. 5.

**6.** "The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $15,000, shall be inviolably preserved." Md. Dec. of Rts. Art. 23 (2010, ch. 480).

**7.** "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land." Md. Dec. of Rts. Art. 19.

**8.** "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Dec. of Rts. Art. 24; "Although the Maryland Constitution contains no express equal protection clause, it is settled that the Due Process Clause of the Maryland Constitution, contained in Article 24 of the Declaration of Rights, embodies the concept of equal protection of the laws to the

The Freeds' motion was denied. The Freeds filed a timely notice of appeal to the Court of Special Appeals with regard to the grant of summary judgment on the survivorship claim and the denial of the motion to alter or amend the judgment. The Court of Special Appeals reversed the Circuit Court's grant of summary judgment. The court held that direct evidence, such as an eyewitness who could say how long Connor consciously suffered, was not required in order to submit the claim to the jury. *Freed v. DRD,* 186 Md.App. 477, 488, 974 A.2d 978, 985 (2009). The court held that the evidence presented to the jury in this case was sufficient for the jury to infer Connor experienced conscious pain and suffering immediately preceding his death by drowning. 186 Md.App. at 489, 974 A.2d at 985. The intermediate appellate court explained that Connor was a healthy five-year-old who entered the pool without adult supervision or a lifejacket. *Id.* Further, according to the Court of Special Appeals, "[Connor] apparently received no blow to the head prior to drowning, nor did he have any physical problem that would have rendered him unconscious prior to going underwater." *Id.* Dr. Marsh admitted it was more likely than not that Connor was conscious when he started to drown, and according to Dr. Modell, once Connor was underwater he experienced typical pain and suffering associated with drowning. 186 Md.App. at 491, 974 A.2d at 986. Based on these facts, the intermediate appellate court concluded that there was sufficient evidence of conscious pain and suffering to submit the claim to a jury; therefore, the Court of Special Appeals held that the Circuit Court erred in granting DRD's motion for summary judgment. 186 Md.App. at 498, 974 A.2d at 991.

Regarding the denial of the motion for alteration of the judgment, the Court of Special Appeals rejected the Freeds' constitutional arguments. The court recognized that this Court has twice rejected indistinguishable claims from the Freeds' claims in this case. *See Oaks v. Connors,* 339 Md. 24,

---

same extent as the Equal Protection Clause of the Fourteenth Amendment." *Murphy v. Edmonds,* 325 Md. 342, 353, 601 A.2d 102, 108 (1992).

660 A.2d 423 (1995); *Murphy v. Edmonds*, 325 Md. 342, 601 A.2d 102 (1992). The intermediate appellate court concluded that it had no discretion but to follow the law as enunciated by this Court.

DRD filed a petition for a writ of certiorari in this Court, which we granted. The Freeds filed a conditional cross-petition for writ of certiorari, which we also granted. *DRD v. Freed*, 410 Md. 701, 980 A.2d 482 (2009). The petition for certiorari raised the question: "Whether a claim for conscious pain and suffering in a survivorship action can be supported solely by an expert opinion in the absence of case specific independent objective evidence." The conditional cross-petition raised the question: "Is there any rational basis for the Court to continue to countenance the discrimination against the most seriously injured non-medical malpractice tort claimants that the application of Maryland's statutory Cap on non-economic damages causes, where there is no evidence to support the Legislature's presumption that the Cap results in lower liability insurance premiums?" We shall affirm the judgment of the Court of Special Appeals and, thereby, answer each question raised in the affirmative.

## DISCUSSION

### I.

We agree with the Court of Special Appeals that the evidence in the present case is sufficient for the trier of fact to reasonably infer that Connor experienced conscious pain and suffering prior to his death. The evidence of Connor's medical history, the autopsy report, and Dr. Modell's opinion all support the inference that Connor was conscious when he entered the water and suffered while drowning. Only a reasonable inference of conscious pain and suffering is required in order to submit the survivorship claim to the jury; therefore, we agree with the Court of Special Appeals that the Circuit Court erred in granting the motion for summary judgment in favor of DRD.

Ordinarily, the plaintiff must establish three elements in order to recover on a claim for conscious pain and

suffering: "1. that the defendant's negligence was the direct and proximate cause of the accident; 2. that the deceased lived after the accident; and 3. that between the time of the accident and the time of death [the deceased] suffered conscious pain." *Tri–State Poultry Co–op. v. Carey,* 190 Md. 116, 125, 57 A.2d 812, 817 (1948). The claim may be proven through eyewitnesses who observed the decedent conscious and in pain and through experts who give their professional opinion tending to establish the decedent's pain and suffering. *Greenstein v. Meister,* 279 Md. 275, 292, 368 A.2d 451, 461 (1977) (noting that both the decedent's wife and police detective testified to the decedents increasing pain until he lost consciousness, and an expert from London, relying on the testimony of others, was able to opine that the decedent's pain exceeded the amount expected from surgery).

A survivorship claim based on the conscious pain and suffering that an individual experienced prior to death was deemed proper in *Beynon v. Montgomery Cablevision Ltd. P'ship,* 351 Md. 460, 464, 718 A.2d 1161, 1163 (1998). In *Beynon,* a van driver was killed in a rear-end collision with a tractor-trailer. 351 Md. at 465, 718 A.2d at 1163. We held that the 71½ foot skid marks left by the decedent's car as he tried to stop was an objective measure from which it was reasonable to infer that the driver experienced fear or fright before the fatal impact. 351 Md. at 508, 718 A.2d at 1185. Consistent with Maryland law, this Court decided that a plaintiff may recover damages for the decedent's emotional distress when "the decedent experiences great fear and apprehension of imminent death before the fatal impact." 351 Md. at 464, 718 A.2d at 1163. We explained that to bring a claim based on conscious pain and suffering, the evidence must support a reasonable inference that the decedent experienced fear or fright. 351 Md. at 508, 718 A.2d at 1185. Further, the evidence on which the inference is based must be capable of objective determination. *Id.*

The Court of Special Appeals considered, in deciding the case of *University of Maryland Medical System Corporation*

*v. Malory,* whether expert testimony could be used as evidence of consciousness when the testimony was not based on any case-specific facts. 143 Md.App. 327, 795 A.2d 107 (2001). In *Malory,* an infant was taken to the hospital because of a respiratory condition. 143 Md.App. at 334, 795 A.2d at 111. His condition fluctuated, but he was released after a few hours when his oxygen levels returned to normal. *Id.* That night he awoke frequently coughing and crying, but his mother found him unresponsive when she awoke the next morning. 143 Md.App. at 335, 795 A.2d at 111. The Malorys relied on an expert's testimony that if the infant had died from hypoxia, as claimed, he would have been conscious and suffered. 143 Md.App. at 347, 795 A.2d at 118. The Court of Special Appeals reversed the jury's award of damages for pain and suffering because there was no evidence that the infant was conscious from the time his mother awoke to the time he was pronounced dead. 143 Md.App. at 348, 795 A.2d at 119. The Court concluded that because there was no case-specific evidence that the infant was conscious, expert testimony opining that the infant experienced conscious pain and suffering was speculative. *Id.* Therefore, the court held the issue of pain and suffering should not have gone to the jury. *Id.*

Not inconsistent with the holding in *Malory,* other jurisdictions, have held that autopsy reports and expert opinions can serve as objective measures for establishing conscious pain and suffering in drowning cases. In *Kline v. Maritrans,* the United States District Court for the District of Delaware held that when an autopsy report does not reveal any premortem traumatic injury to the decedent, a reasonable inference may be drawn that the decedent was conscious upon entering the water. 791 F.Supp. 455, 464 (D.Del.1992). In *Clark v. Manchester,* the Supreme Court of New Hampshire concluded that when a child drowned in stagnant, muddy water, the jury could legitimately infer that not only was the child's death noninstantaneous, but also that he felt pain and suffering. 64 N.H. 471, 13 A. 867, 869 (1887). Similarly, in *McAleer v. Smith,* the absence of a skull fracture and expert

testimony about the drowning process was sufficient to reasonably infer that the decedent was conscious and probably experienced a great deal of anxiety and terror. 791 F.Supp. 923, 929 (D.R.I.1992). Several other courts have come to similar conclusions. *See also Cook v. Ross Island,* 626 F.2d 746, 750 (9th Cir.1980) (holding that evidence of a lack of a skull fracture is sufficient to permit the inference that the decedent experienced conscious pain and suffering during his death by drowning); *Mitchell v. Akers,* 401 S.W.2d 907, 912 (Tex.Civ.App.1966) (holding that evidence showing that the child did not have any marks indicating he would have been rendered unconscious before entering the water was sufficient to justify damages for the child's "physical pain and anguish as a result of the accident.").

■ We agree with those courts that have concluded that autopsy reports and expert testimony may be sufficient evidence from which to infer conscious pain and suffering in drowning cases and that eyewitness testimony is not essential. The facts in this case support a reasonable inference that Connor was conscious and suffered while drowning. According to the evidence presented, while no eyewitnesses saw Connor drown, the evidence shows that he likely was conscious when entering the water. Connor's medical history shows that he did not suffer from any illnesses that would have subjected him to blackouts. The autopsy report also showed that he did not have any marks on his body suggesting he was rendered unconscious prior to entering the water. From this evidence, not only the Freeds' expert, Dr. Modell, but also DRD's expert, Dr. Marsh, confirmed in their respective testimonies that Connor was conscious when he entered the water. Dr. Modell went on to state that not only was Connor conscious, but the doctor stated to a reasonable degree of medical certainty that Connor consciously experienced pain and suffering. In his deposition, Dr. Modell described the process an individual will experience when drowning. He said:

The pathophysiology of drowning begins when the mouth and nose first become submerged in the water. At that

point in time, the first reaction is to voluntarily breath hold [sic] to avoid aspirating water. The carbon dioxide tension then builds up to a point where you can no longer voluntarily avoid the sensation to breathe.

At that point in time you start to take a breath and when you get water in the oral pharynx, that water stimulates the larynx to go into laryngospasm to further protect the airway from aspiration of water. And as a result you try to breathe but you can't because you are totally obstructed. It's as though someone were suffocating you or you put a clamp on your trachea.

As a result, you will build a tremendous negative pressure within your chest as your diaphragm tries to pull in air, which you can't, or water. And as a result the intercostal muscles will sink into the chest rather than rise. This causes a great deal of pain and discomfort of pain and suffering and this process lasts for a minute and a half to two minutes.

This testimony stating that a conscious person will feel pain while drowning, along with the facts that Connor was a five-year-old, who did not know how to swim, and who was conscious when entering the water, supports an inference that Connor experienced fear and suffered prior to his death. Thus, there was sufficient evidence presented for the trier of fact to reasonably infer that Connor underwent conscious pain and suffering prior to his death.

Our decision in *Beynon* supports our conclusion that it is not a matter of speculation to infer that Connor was conscious and suffered before he drowned. Like in *Beynon*, there was objective evidence in the present case from which this inference could be drawn. In *Beynon*, the objective measure was the 71½ foot long skid marks made by the decedent's car showing that the decedent was aware of the imminent collision. *Beynon*, 351 Md. at 508, 718 A.2d at 1185. Similarly, in this case, the requirement of objective evidence is fulfilled by the expert testimony stating to a reasonable degree of medical certainty that Connor was conscious and that a conscious

person is aware that he or she is drowning. Furthermore, we find this case to be distinguishable from the Court of Special Appeals' opinion in *Malory,* the case on which the Circuit Court relied. In *Malory* there was no case specific evidence of the decedent's consciousness prior to his death. The expert in that case relied on the amount of pain an individual would feel while losing oxygen, rather than looking specifically at the facts about the decedent, when stating his opinion that the infant was conscious prior to his death. *Malory,* 143 Md.App. at 347, 795 A.2d at 118. In the present case, both Dr. Marsh and Dr. Modell considered Connor's autopsy report and his medical history when opining that he was conscious when entering the water. This evidence, if believed, would be sufficient for a reasonable trier of fact to infer that Connor was conscious when he was in the water and that, accordingly, he experienced actual pain and suffering. Thus, the issue of conscious pain and suffering should have been submitted to the jury.

## II.

The Freeds challenge the Court of Special Appeal's decision to uphold the trial court's denial of the motion to alter or amend the judgment. The constitutionality of the Cap on non-economic damages has previously been upheld by this Court and we affirm our previous holdings based on the principle of *stare decisis.* Further, even if we departed from this standard, the Cap would nonetheless pass constitutional scrutiny under the rational basis test.

### Standard of Review

Evaluating the constitutionality of an act of the Maryland General Assembly is a question of law. *Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 80 (2004). Additionally, the interpretation of the Constitution and the Maryland Declaration of Rights is a question of law. 383 Md. at 604, 861 A.2d at 80–81. When reviewing the statutory cap on non-economic damages in this case, this Court must perform an independent review to determine if the constitutionality of the Cap should continue to be upheld.

## Stare Decisis

We have previously ruled on the constitutionality of the Cap on non-economic damages imposed by § 11–108 of the Courts and Judicial Proceedings Article. *See Oaks v. Connors,* 339 Md. 24, 660 A.2d 423 (1995); *Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102 (1992). The principle of *stare decisis* controls our decision today. We have said that *stare decisis* means "to stand by the thing decided," and is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Livesay v. Baltimore County,* 384 Md. 1, 14, 862 A.2d 33, 40–41 (2004) (quoting *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, 736–37 (1991)). The United States Supreme Court noted the importance of *stare decisis* in ensuring that, "the law will not merely change erratically, but will develop in a principled and intelligible fashion." *Livesay,* 384 Md. at 14, 862 A.2d at 41 (quoting *Vasquez v. Hillery,* 474 U.S. 254, 265, 106 S.Ct. 617, 624, 88 L.Ed.2d 598, 610 (1986)).

The tests for departing from *stare decisis* are extremely narrow in Maryland, and there are few exceptions for when this Court should set aside precedent. *Livesay,* 384 Md. at 15, 862 A.2d at 41. In *Livesay* we said:

> While we have never construed the doctrine of *stare decisis* to preclude us from changing or modifying a common law rule when conditions have changed or that rule has become so unsound that it is no longer suitable to the people of this State, departure from the rule should be the extraordinary case, especially so when the change will have a harmful effect upon society.

384 Md. at 15, 862 A.2d at 41.[9] Accordingly, the doctrine of *stare decisis* is not completely unyielding, but allows for only a

---

**9.** *See also Bozman v. Bozman,* 376 Md. 461, 494, 830 A.2d 450, 470 (2003) (abrogating the interspousal tort immunity doctrine, stating

few exceptions. *State v. Adams,* 406 Md. 240, 259–60, 958 A.2d 295, 307 (2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1624, 173 L.Ed.2d 1005 (2009).

We have recognized two circumstances when it is appropriate for this Court to overrule its own precedent. First, this Court may strike down a decision that is, "clearly wrong and contrary to established principles." *Adams,* 406 Md. at 259, 958 A.2d at 307 (quoting *Townsend v. Bethlehem–Fairfield Shipyard, Inc.,* 186 Md. 406, 417, 47 A.2d 365, 370 (1946)). Further, "previous decisions of this court should not be disturbed . . . unless it is plainly seen that a glaring injustice has been done or some egregious blunder committed." *State v. Green,* 367 Md. 61, 79, 785 A.2d 1275, 1285 (2001) (quoting *Greenwood v. Greenwood,* 28 Md. 369, 381 (1868)). Second, precedent may be overruled when there is a showing that the precedent has been superseded by significant changes in the law or facts. *Livesay,* 384 Md. at 15, 862 A.2d at 41; *Harrison v. Montgomery County Bd. of Educ.,* 295 Md. 442, 459, 456 A.2d 894, 903 (1983) (allowing departure from *stare decisis* when there are "changed conditions or increased knowledge that the rule has become so unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people").

The Freeds rely on several of our decisions to argue that this Court has held that precedent does not have to be followed in certain circumstances. First, the Freeds contend that constitutional issues are less constrained by the principles of *stare decisis.* They cite *Bozman v. Bozman,* where we quoted the United States Supreme Court in saying, "when governing decisions are unworkable or are badly reasoned, this Court has never felt constrained to follow a precedent." 376 Md. 461, 493–94, 830 A.2d 450, 469 (2003) (*quoting Payne v. Tennessee,* 501 U.S. 808, 827–828, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, 737 (1991)). Next, the Freeds note *Townsend*

strict adherence to *stare decisis* "would severely limit a court's ability to decide disputes, even in cases where the applicable guiding law had been decided incorrectly, or, in times of changed social circumstance").

where we said, "it is sometimes advisable to correct the decision or decisions wrongly made in the first instance, if it is found that the decision is clearly wrong and contrary to established principle." 186 Md. at 417, 47 A.2d at 370. For the reasons stated below, we hold that neither of these circumstances are applicable or justify abandoning *stare decisis* in this case.

■ The Cap on non-economic damages, as codified in the Courts and Judicial Proceedings Article § 11–108, was intended to address a legislatively-identified insurance crisis in Maryland at the time of enactment. *Murphy,* 325 Md. at 368, 601 A.2d at 114–15. This intent was effectuated by imposing a limit on the amount of non-economic damages that a plaintiff could receive in certain tort cases. *Id.* There are two cases with direct bearing on the cross-petition issue in this case. In *Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102 (1992), we concluded that a constitutional challenge to the Cap should be scrutinized on a rational basis standard of review, rather than a heightened level of scrutiny. 325 Md. at 362, 601 A.2d at 113. We stated the Cap "does not implicate such an important 'right' as to trigger heightened scrutiny. Instead, the statute represents the type of economic regulation which has regularly been reviewed under the traditional rational basis test by this Court and the Supreme Court." *Id.* We also held that the Cap did not violate equal protection guarantees or infringe on a plaintiff's right to a jury trial. 325 Md. at 354, 375, 601 A.2d at 108, 118.

In *Oaks v. Connors,* 339 Md. 24, 660 A.2d 423 (1995), this Court once again upheld the constitutionality of the Cap on non-economic damages. In evaluating the application of the Cap to a non-injured spouse's loss of consortium claim for her injured spouse, we reasoned that not applying the statutory Cap equally to a personal injury claim and a loss of consortium claim would allow the injured spouse to receive one and a half times more in non-economic damages than was intended by the Cap. 339 Md. at 38, 660 A.2d at 430. We therefore held that the Cap on non-economic damages applied to loss of

consortium cases, thus affirming *Murphy's* determination that the Cap itself was constitutional. 339 Md. at 37, 660 A.2d at 428.

■ Nonetheless, the Freeds argue in favor of heightened scrutiny, stating rational basis scrutiny should not apply because § 11–108 implicates the important personal rights to full redress for injury and trial by jury. We evaluated and rejected this argument in *Murphy.* 325 Md. at 362, 373, 601 A.2d at 114, 118. Regarding access to the courts, we stated, "[t]here is a distinction between restricting access to the courts and modifying the substantive law to be applied by the courts. [A] plaintiffs' cause of action based on negligence was not abolished by § 11–108. Instead, § 11–108 simply modifies the law of damages to be applied in tort cases." *Murphy,* 325 Md. at 366, 601 A.2d at 114. Further, the right to a jury trial is likewise unaffected by the Cap. The Cap reflects a policy judgment by the General Assembly which does not interfere with the underlying right to a trial by jury because plaintiffs will still have a jury determine the facts and assess liability. *Franklin v. Mazda Motor Corp.,* 704 F.Supp. 1325, 1331 (D.Md.1989).

■ Equal protection is also not violated by the statutory limitation on non-economic damages. The Freeds argue that the Cap created a classification between less seriously injured tort plaintiffs, who are entitled to keep everything awarded by a jury, and more seriously injured plaintiffs, who are not entitled to receive non-economic damages that exceed the cap. Under this theory, the Freeds argue that this classification should be subjected to a heightened standard of review.

The Freeds' contention was rejected in *Murphy* and we uphold our previous decision. In Maryland, this Court has noted that the General Assembly may modify common law rights and remedies. *Murphy,* 325 Md. at 362, 601 A.2d at 112. Such changes will invariably favor one party to the disadvantage of another in litigation. *Murphy,* 325 Md. at 363, 601 A.2d at 112. This result, however, does not create a classification between affected parties, and certainly not a

classification subject to heightened scrutiny. *Id.* Instead, we follow the United States Supreme Court standard for reviewing classifications that are challenged under the equal protection guarantees. *Murphy,* 325 Md. at 362, 601 A.2d at 111. The Cap is the type of economic classification that has been regularly reviewed under the traditional rational basis test.[10]

The Freeds' contention that the Cap fails even rational basis scrutiny is also without merit. The rational basis test is highly deferential; it presumes a statute is constitutional and should be struck down only if the reviewing court concludes that the Legislature enacted the statute irrationally or interferes with a fundamental right. *Conaway v. Deane,* 401 Md. 219, 274–75, 932 A.2d 571, 604 (2007). As discussed in *Murphy:*

> The General Assembly's objective in enacting the cap was to assure the availability of sufficient liability insurance, at a reasonable cost, in order to cover claims for personal injuries to members of the public. This is obviously a legitimate legislative objective. A cap on noneconomic damages may lead to greater ease in calculating premiums, thus making the market more attractive to insurers, and ultimately may lead to reduced premiums, making insurance more affordable for individuals and organizations performing needed services. The cap, therefore, is reasonably related to a legitimate legislative objective.

325 Md. 342, 369–370, 601 A.2d 102, 115. On the basis of the record before us, we see no reason to disavow our rationale as explained in *Murphy.*

Turning to the Freeds' argument that we should abandon our precedent, Maryland has never adopted a rule

---

**10.** *Murphy v. Edmonds,* 325 Md. at 355, 601 A.2d at 108 ("Generally under [the rational basis] test, a court 'will not overturn' the classification 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [governmental] actions were irrational.' ") (*quoting Gregory v. Ashcroft,* 501 U.S. 452, 469, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410, 430 (1991)).

such as reflected in the Freeds' contention that constitutional precedents are less deserving of robust *stare decisis* protection than are other rulings. The constitutional nature of the Freeds' challenge cannot alone justify overriding precedent. Overall, the constitutional challenges put forth by the Freeds are essentially the same challenges that we rejected in *Murphy* and *Oaks*. More than 17 years have passed since our decision in *Murphy*. Both the underlying rationale in *Murphy* and the Cap itself have become embedded in the bedrock of Maryland law.[11] These rulings require as much deference as non-constitutional cases, and are not less protected by *stare decisis* based solely on their constitutional nature.

Finally, the Freeds argue that *stare decisis* should not apply because the reasoning and factual premises underlying our decision in *Murphy v. Edmonds* were clearly wrong. The Freeds first point to individual members of the Judiciary who have rejected the Cap. The Freeds highlight Judge Chasanow's dissent in *Murphy*. He wrote:

> It seems to me that the right to recover full and fair compensation from a tortfeasor is an important personal right, and any limitation on that right should be subject to "heightened" or "intermediate" scrutiny. Further, in my opinion, legislation limiting recovery of noneconomic damages ... should not survive heightened scrutiny in ... tort actions where there has been no clearly established need for such legislation.

*Murphy v. Edmonds*, 325 Md. 342, 379, 601 A.2d 102, 120 (1992) (Chasanow, J., dissenting). The Freeds next draw

---

11. While the Court of Appeals has not recently addressed this issue, the Court of Special Appeals has decided a series of cases in reliance on *Murphy*. *See Green v. N.B.S. Inc.*, 180 Md.App. 639, 656–657, 952 A.2d 364, 375 (2008) (*aff'd*, 409 Md. 528, 976 A.2d 279 (2009) (affirming the Cap applies to all statutory and constitutional torts.)); *Polakoff v. Turner*, 155 Md.App. 60, 71, 841 A.2d 406, 413 (2004) (*aff'd on the other grounds*, 385 Md. 467, 869 A.2d 837 (2005)); *Owens–Corning v. Walatka*, 125 Md.App. 313, 335–37, 725 A.2d 579, 589–90 (1999). *See also Franklin v. Mazda Motor Corp.*, 704 F.Supp. 1325, 1331 (D.Md.1989) (rejecting a challenge to the Cap based on the Articles 19 and 23 of the Declaration of Rights).

attention to the trial judge's holding and rationale, as discussed by this Court in *Murphy:*

> In light of his view that the classification created by § 11–108 infringes upon an "important right," the trial judge concluded that equal protection principles required that the classification be subject to a "heightened scrutiny" test. Applying a "heightened scrutiny" test, the trial judge held that § 11–108 violated the equal protection guarantee.

325 Md. at 350, 601 A.2d at 105–06 The Freeds are misguided in their reliance on these statements. The opinions of these judges did not reflect the current state of the law in Maryland when written or uttered and have gained no more favor over the intervening years. Moreover, taken at face value, these observations do not show flawed reasoning sufficient to justify overturning precedent. They are merely divergent opinions which did not affect the final outcome of *Murphy* or influence development of subsequent case law upholding the constitutionality of the Cap.

The present case does not satisfy the tests for rejecting *stare decisis* or the *Murphy* and *Oaks* precedents which upheld the constitutionality of the Cap. Merely arguing that the majority was wrong in *Murphy* is not sufficient grounds to abrogate the principles of *stare decisis*. This case does not fall under the two exceptions to *stare decisis* recognized in Maryland. Unlike *Townsend,* there has been no evidence or persuasive arguments put forth that our decision in *Murphy* was clearly wrong or contrary to established principles. The Freeds have not shown a significant change in the underlying facts and circumstances. This Court is therefore constrained by our prior decisions in upholding the constitutionality of the Cap.

## CONCLUSION

The Circuit Court erred in granting DRD's motion for summary judgment on the issue of Connor's conscious pain and suffering. We hold that eye witness testimony is not the sole means by which an evidentiary predicate may be laid

from which a reasonable inference of conscious pain and suffering may be drawn. Expert testimony and case-specific facts may be sufficient grounds to submit the issue to the jury.

We affirm the Court of Special Appeals in denying the motion to amend or alter the judgment, and upholding the statutory cap on non-economic damages. We reaffirm the constitutionality of the Cap as explicated in *Murphy v. Edmonds*, 325 Md. 342, 601 A.2d 102 and *Oaks v. Connors*, 339 Md. 24, 660 A.2d 423. In the present case, the Freeds have offered no evidence of a clear error, or a change in law or circumstances that would justify disregarding *stare decisis* and rendering the Cap unconstitutional. In our view, the Cap continues to serve a legitimate government purpose.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER AND CROSS-PETITIONERS TO DIVIDE THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS EQUALLY.**

MURPHY, J., Concurs and Dissents.

MURPHY, J., concurring and dissenting.

I agree that the Respondents' evidence was sufficient to support a finding that the deceased suffered conscious pain and suffering. I dissent, however, from the majority's refusal to require that the Cap be subjected to a "heightened scrutiny" analysis. For the reasons stated by Judge Chasanow in *Murphy v. Edmonds*, 325 Md. 342, 378–85, 601 A.2d 102, 120–123 (1992) (Chasanow, J., dissenting), I would vacate the judgment of the Court of Special Appeals and direct that the Circuit Court conduct further proceedings at which it shall apply the heightened scrutiny test to determine whether the Cap violates the equal protection guarantee embodied in Article 24 of the Maryland Declaration of Rights.